[Civ. No. 11622. Third Dist. July 25, 1968.]

CHRISTEL LaBORDE, Plaintiff and Respondent, v. McKESSON & ROBBINS, INC., et al., Defendants and Respondents; ELDORADO INSURANCE COMPANY, Intervener and Appellant.

Jones, Lamb, Jarboe & Boli and J. Allen Jones for Plaintiff and Respondent.

McLaughlin, Russell, McCarthy & Kaelin and Jerome M. McLaughlin for Defendants and Respondents.

Kiernan, Misciagna & Golman, Joseph J. D'Andre and Cyril Viadro for Intervener and Appellant.

Philip M. Madden, Partridge, O'Connell & Partridge and F. Britton McConnell as Amici Curiae on behalf of Intervener and Appellant.

PIERCE, P. J.—Plaintiff Christel LaBorde, a cocktail waitress employed by Zim's Taraval, suffered a work-induced injury. The employer's compensation carrier, Eldorado Insurance Exchange (intervener-carrier, hereinafter referred to as "carrier") paid workmen's compensation benefits. The injury occurred under circumstances involving alleged third party tortfeasors, McKesson & Robbins, Inc., and Munson G. Shaw Company, a Division of National Distillers & Chemical Corporation. Plaintiff sued the alleged third party tortfeasors.[1] The answer of defendants denied negligence and alleged plaintiff's contributory negligence. A complaint in intervention by carrier for reimbursement of the compensation benefits paid was filed.[2] Plaintiff and carrier were represented here by separate attorneys. Defendants in their answer to the complaint in intervention raised the issue of the concurrent negligence of plaintiff's employer, Zim's Taraval. The action was tried for two days and part of a third day. We do not deem it necessary to review herein the evidence produced in detail. Forceful evidence supported the essential allegations of the complaint.[3] There was also substantial evi-

---

[1] Such a suit is authorized under Labor Code section 3852.

[2] Such reimbursement is also contemplated by the Labor Code. An employer is permitted to bring an action of his own (§ 3853) or to intervene as a plaintiff in an action brought by the employee (§ 3853). In lieu of intervention or of an action on his own behalf, the employer may allow the employee to sue alone and the employer may then apply for a first lien against the employee's judgment for reimbursement of benefits paid, less an allowance to the employee for litigation expenses and an attorney's fee. (Labor Code, § 3856, subd. (b).) The compensation carrier who has paid benefits is deemed the employer. (§ 3850.) Thus as used in this context "employer" includes the employer's compensation carrier. (*Harrison* v. *Englebrick* (1957) 254 Cal.App.2d 871, 874 [62 Cal.Rptr. 831].)

[3] Said complaint alleges:
"That on Friday, November 13, 1964, plaintiff was acting within the scope of her duties as a cocktail waitress at ZIM'S SOUTHGATE. That at said time plaintiff received an order for two flaming rum-type drinks and assisted the bartender in preparing said drinks by lighting a spoonful of said Blue Flame rum which was to be floated on the top or surface of said drink. That when plaintiff lighted said Blue Flame rum, and said flame was transmitted to the bottle of Blue Flame rum and caused the gases contained in said bottle to explode. That said explosion caused burning liquor to be sprayed upon the person of plaintiff, severely injuring her."

dence of concurrent negligence on the part of the employer's bartender proximately contributing to the plaintiff's injury.[4] By the afternoon of the third day, October 19, 1966, presentation of plaintiff's case had been concluded except for the testimony of medical experts.

A discussion was held in chambers. The attorney for defendants informed the court (with confirmation by plaintiff's attorneys) that their respective clients had reached a compromise settlement as to liability and damages insofar as those issues related to plaintiff's general damages "but without giving any regard, whatever, for the expenditures made by the compensation insurance carrier, which is a plaintiff in intervention. Leaving the issues of liability as between the plaintiff in intervention and the two defendants . . . open." It was clear from this discussion that defendants' counsel was representing that plaintiff and defendants had settled all that portion of plaintiff's claim which plaintiff individually was entitled to recover leaving unsettled only the issue of carrier's right to reimbursement for its outlay. The amount of that outlay was $3,374.37 for temporary disability and $3,393.62 for medical care. Defendants' attorney also stated he was willing to stipulate with the attorney for carrier as to the expenditures it had made. The discussion in chambers continued the following morning. It centered upon the difficulties of construing Labor Code sections 3859 and 3860 in the light of *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 72 [17 Cal.Rptr. 369, 366 P.2d 641].)

Section 3859 states that "[n]o release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both. The consent of both the employer and employee filed in court in writing together with the approval of the court, is sufficient in any action or proceeding where such approval is required by law." Section 3860 is longer. As pertinent here it provides in subdivision (a) that no "settlement . . . with or without suit, is valid or binding as to any party thereto without notice to . . . the employer . . . with opportunity to the employer to recover the amount of compensation he has paid. . . ." Subdivision (b) of the section states in part: "The entire amount

---

[4]The record in addition to containing evidence of the facts pleaded in the complaint (see footnote 3, *supra*) also showed the bartender was aware of the fact that the rum was 151 proof and inflammable. He knew there was flame on the spoon when he had commenced to pour the rum for the second drink onto it. In pouring the rum the spout of the bottle was within an inch or less from the flame. A flame shot out of the bottle directly onto plaintiff, igniting her clothing.

of such settlement, with or without suit, is subject to the employer's full claim for reimbursement. . . .'' Standing by themselves, sections 3859 and 3860 would justify the conclusion that a settlement by an employee without the consent of the employer or without reimbursing him in full could not be made. But the sections cannot be read in a vacuum. After their enactment as worded above two important court-made rules were announced.

*Witt* v. *Jackson, supra,* 57 Cal.2d 57, 72, stands in part for a rule that a concurrently negligent employer (and therefore his compensation carrier) cannot recover reimbursement for compensation benefits made to an injured employee. Recovery is barred whether the reimbursement is sought (1) by filing a lien against a judgment recovered by an employee suing the third party tortfeasor alone, or (2) by intervening in the employee's action, or (3) by an independent action brought by the employer against the third party. *Witt* also asserts another rule. The employee may not have double damages on his claim. Since he has already recovered his ''special'' damages as compensation benefits he may not receive them again from the third party tortfeasor.

In the case before us carrier refused to consent to the settlement mentioned above. The court had indicated that it might consider a motion by carrier for an order that the stipulation was invalid. The record is unclear on this point. It is completely clear, however, that carrier did not seek to set aside the compromise. It adopted another tactic. It moved for an order that the settlement funds be declared to be held in trust; it moved for leave to amend its complaint in intervention to assert a lien against any recovery of plaintiff against defendants; it filed a purported lien. The court denied the motions and directed carrier to proceed with the trial (before the waiting jury) on the sole remaining issue—the employer's concurrent negligence. Carrier did not do so. Instead, it moved for a dismissal of its complaint in intervention—with prejudice. That motion the court granted. Four more motions were then made by carrier: (1) motion for an order imposing a first lien on the plaintiff's recovery; (2) motion allegedly under section 3860 for an order allocating expenses and fees following settlement; (3) motion allegedly under section 3859 for production of the settlement agreement; and (4) motion for order restraining defendant from transferring settlement funds to plaintiff and restraining plaintiff from dissipating those funds. The appeal followed denial of these motions.

■ The issue we determine on this appeal is whether a settlement between plaintiff-employee and third party tortfeasors is valid under the circumstances descrided. We hold that it is. Sections 3859 and 3860 were not designed to cover this *Witt* v. *Jackson* situation. They were not intended to block a settlement between an injured employee and a third party tortfeasor where the concurrent negligence of the employer has been made an issue in the litigation and where the settlement is carefully drawn to leave intact all of the rights of the employer (and his compensation carrier).

### THE REASONS FOR PERMITTING THE SETTLEMENT MADE HERE

This appears to be a case of first impression in California. *Smith* v. *Trapp* (1967) 249 Cal.App.2d 929 [58 Cal.Rptr. 229], which we will discuss below, held a settlement between an employee and a third party tortfeasor to which an intervening compensation carrier objected was invalid. There are facts in *Smith* similar to the facts of this case. But there are also facts which we believe to be distinguishing. There are also statements in *Smith* with which we cannot agree. Our discussion, however, should be initiated with a detailed analysis of the steps taken here already described and the consequences of those steps.

First, we consider the factual background at the time the compromise was entered into between plaintiff and defendants. All parties were before the court: the injured employee-plaintiff, the third party tortfeasors-defendants, and the employer represented by carrier. The case was being tried to a jury. The issues being tried were not only the negligence of the third party tortfeasors, whether it was a proximate cause of the injury, and the possible contributory negligence of plaintiff. The questions of the existence of concurrent negligence of the employer's agent, the bartender, and whether such negligence if found was a proximate cause were also before the jury. Incidentally, as we read the record and as we have indicated above, a strong case both of negligence of defendants and concurrent negligence of the bartender, all contributing proximately to the injury, had been made.

Secondly, the compromise was not a complete settlement of the litigation. It did not cover all of plaintiff's damages. It did not settle the part of plaintiff's claim for which she had received workmen's compensation benefits from carrier. As to that part of the claim plaintiff was no longer interested. Under *Witt* v. *Jackson, supra,* she could not recover them. She would have been getting double damages since she had

already been paid therefor. Carrier may or may not have been entitled to recovery of those amounts. That right, again under *Witt* v. *Jackson, supra,* depended upon the issue of the concurrent negligence of the employer's agent. That issue was still pending before a waiting jury. Some evidence had been heard but both defendants and carrier were before the court and trial could have been continued until all material evidence on the issue had been heard.

We can perceive of no respect in which carrier's interests were prejudiced by the settlement. Every aspect of the settlement was fair. The cards were on the table. True, carrier had not received notice before the settlement was reached, but it did have notice before the settlement was concluded. Carrier complains it was not told the amount of the settlement. It was informed, however, that the settlement did not involve any sums in which carrier was interested. Its assurance of reimbursement for those sums—had the jury determined its right of recovery thereof—was intact and unimpaired.

Why did carrier withhold its consent? The reason is not obscure. It was in a position—particularly after having heard the evidence of employer's concurrent negligence to evaluate its exposure (in the event of a continued trial) to a finding by the jury and court that it was entitled to recover nothing. It saw a way to circumvent that risk. Having found comfort in the language of sections 3859 and 3860 it sought earnestly during two court sessions to persuade the trial court that that language gave it a windfall. It did not ask the court to vacate the settlement. To have done that would have been to restore the risk. The persuasion attempted was to have the trial court interpret the pre-*Witt* v. *Jackson* legislation to permit carrier *sans risk* to receive reimbursement regardless of its entitlement thereto. The trial court was unconvinced and we are not impressed by the equities of carrier's appeal. Nor do we think law overrules equity here.

### The Effect of Labor Code Sections 3859 and 3860

We have found it more convenient, in the interests of clarity, to quote the material provisions of Labor Code sections 3859 and 3860 and to summarize *Witt* v. *Jackson, supra,* 57 Cal.2d 57 in our discussion of the steps by which the settlement was reached. Both sections were in effect before *Witt* v. *Jackson.*[5] To assert that the Legislature used the language in those sections we have quoted with the rule of *Witt* v. *Jackson*

[5]Section 3860 was amended thereafter (Stats. 1965, ch. 1513) but it was a ''housekeeping'' amendment'' solely for the purpose there and

in forecast would be to give it credit for a prescience beyond any flight of fancy this court would care to take. We think the legislative purpose is not unclear. ▮ Sections 3859 and 3860 envisage only a settlement which covers the totality of claims, general as well as special damages, claims for which the employee has not been compensated and seeks compensation plus claims by the employer for reimbursement for his outlay. Their purpose was to insure the non-negligent employer (or his compensation carrier) against a possibility that the employee might pocket a sum representing workmen's compensation benefits and thus jeopardize the employer's subrogated right of reimbursement. (Insofar as it required that consent be given by the employee it was for the employee's protection against any settlement by which he might become short-changed.) We cannot assume that a legislative intent to block any and all settlements merely to permit a negligent employer or his compensation carrier, sighting an opportunity to get something for nothing, to hold a hand out proclaiming: "give me something—or else."

▮ The law favors the settlement of controversies. (*Central Basin etc. Water Dist.* v. *Fossette* (1965) 235 Cal.App.2d 689, 705 [45 Cal.Rptr. 651].) We have stated what the purpose of the law was and what it was not. ▮ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . Such purpose will not be sacrificed to a literal construction of any part of the act." (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Words will not be given their literal meaning when to do so would make the provisions of a statute apply to transactions never contemplated by the legislative body. The intent of a law prevails over the letter and the letter will, if possible, be so read as to conform to the spirit of the act. (*Farnsworth* v. *Nevada-Cal Management* (1961) 188 Cal.App.2d 382, 387 [10 Cal.Rptr. 531].)

*Smith* v. *Trapp, supra,* 249 Cal.App.2d 929 (decided after *Witt* v. *Jackson*)[6] had several facts similar to the case before this court: Workmen's compensation benefits had been paid,

elsewhere in the Labor Code of substituting "Workmen's Compensation Appeals Board" for "Industrial Accident Commission" when that name change took place.

[6]Appellant has cited other authorities: *Cain* v. *Judson Pac. Murphy Corps.,* 19 Cal. Comp. Cases 140, *Dodds* v. *Stellar,* 30 Cal.2d 496 [183 P.2d 658]; *Jacobsen* v. *Industrial Acc. Com.,* 212 Cal. 440 [299 P. 66]; *Record* v. *Indemnity Ins. Co.,* 103 Cal.App.2d 434 [229 P.2d 851]. All these cases predated *Witt* v. *Jackson, supra,* 57 Cal.2d 57. We have ex-

an alleged third party tortfeasor had been sued, the employer's compensation carrier had filed a complaint in intervention, concurrent negligence of the employer had been placed in issue, a compromise had been made between plaintiffs and defendant of which the carrier had notice before court approval, and under which it was contemplated the carrier would continue the action and the latter had refused to join the settlement. But there were also differences. Principal among them was the fact that the action was for wrongful death. In such an action the damages recoverable are quite different from those to which an injured living plaintiff in a tort action is entitled. Whether the action be brought by the personal representative of the deceased or by all of the decedent's heirs it is brought for the benefit of the latter. Damages are not recoverable for pain, suffering or for disfigurement of the decedent while he lived. (Prob. Code § 573.) Generally speaking the damages recoverable are the aggregate of all pecuniary loss suffered by the heirs. The extent of a pecuniary loss is gauged upon dependency. A lump sum verdict is made by the court and apportioned by the court. If there is a compromise the court also determines distribution. (Code Civ. Proc. § 377; *Changaris* v. *Marvel* (1964) 231 Cal.App.2d 308 [41 Cal.Rptr. 774], hg. den.) Under the workmen's compensation provisions of the Labor Code, although the awards are inflexible and may sometimes be less generous than a jury's verdict, recovery also rests upon dependency. (See Lab. Code §§ 4702, 4703.) In an action for wrongful death an employer also has a right (absent his concurrent negligence) to reimbursement for both the fixed benefits paid dependents on account of his employee's death and the injury-induced benefits paid him during his lifetime. (Lab. Code, § 3852; *Fitzgerald* v. *Quinn* (1933) 131 Cal.App. 457, 461 [21 P.2d 656].) We are not required to hold, and we do not choose to make dictum, that there are no circumstances under which a settlement between heirs and tortfeasor without the consent of an employer possibly negligent (and, if so, barred from reimbursement under *Witt* v. *Jackson*) could not be upheld. All we say is that the settlement portions to which employer and employee respectively are severally entitled overlap and are

---

amined them. None anticipated the rules which *Witt* pronounced; none attempted to interpret the rights and obligations of employer and employee at a time when concurrent negligence of the former would bar his right to reimbursement through lien or litigation. Nor did any of them try to interpret the purpose of the Labor Code sections in the light of the *Witt* restrictions. We do not find these cases relevant or helpful.

interwoven. We recognize that consummation of a settlement by employee and defendant not participated in by the employer (or his compensation carrier) which would be fair to the latter is difficult to contemplate. There are other differences between the *Smith* case and this one. There the settlement was before trial; here it was during trial. The court in *Smith* (on p. 939 of 249 Cal.App.2d) expressly based its reasoning to support its holding upon the fact that there ''a mere allegation of [the employer's] contributory negligence'' existed. Even were the decision binding upon us, which it is not, the quoted statement limits the ruling. The rest is dictum.

Another difference: In *Smith* the intervenor-carrier had vigorously sought to set aside the settlement. Here, although the record is confusing as to whether or not the court granted to carrier the option to have the settlement declared voidable, the record is quite clear carrier did not seek such a declaration. As we have noted, it did not want to run the risk of having the action continue to the possible (and we think probable) conclusion of a verdict that it was not legally entitled to reimbursement.

That we may not be misunderstood in this opinion, let us underline *we do not rest our decision upon the absence of a motion by the intervenor-carrier to set aside the settlement.* We rest it upon the other considerations hereinabove expressed. We repeat the law favors settlements even when they only narrow the issues to be tried. Where, as here, insistence upon participation in the settlement by an employer or his carrier can only equip it with a sword, not a shield,[7] we will not ascribe to the Legislature an intent to declare, nor will this court propound, such a policy.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1968.

---

[7]Deferentially, we particularly disagree with the following statement in *Smith* (at p. 940 of 249 Cal.App.2d): ''The requirement of consent of both the employer and the employee to a third party settlement is not prejudicial to the employee . . . . Where the issue of the employer's negligence is asserted as a defense to his claim for reimbursement and investigation reveals facts indicating proof of the employer's contributory negligence, the latter, in protecting his monetary interest will certainly negotiate in good faith for the purpose of settling the claim or suit.''

The facts of the case before us emphasize rather pointedly the fallacy of that prophecy.